UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NIKOLAI SARAKHMAN,

        Plaintiff,

v.

SUMITOMO MITSUI FINANCE AND
LEASING COMPANY, LTD.,

        Defendant.

Case No.:

Judge:

COMPLAINT

[DEMAND FOR JURY TRIAL]

## INTRODUCTION

1. Plaintiff brings this action for violations of 42 U.S.C. §1981; the Equal Credit Opportunity Act, 15 U.S.C. §1691, et seq.; the New York State Human Rights Law, § 290, et seq.; and the New York City Human Rights Law, § 8-101, et seq.

2. This case arises out of, *inter alia,* the denial of credit and refusal by the Defendant to honor its agreement to provide financing to Plaintiff once it learned of Plaintiff's Russian and Belarussian race, national origin, ancestry, and ethnicity.

## JURISDICTION AND VENUE

3. This case arises under the laws of the United States: specifically 42 U.S.C. §1981 and the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. ("ECOA"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. This Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332 over the State law causes of action.

5. This Court has supplemental jurisdiction over the New York State and New York City law claims pursuant to 28 U.S.C. §1367.

6. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §1391. Defendant is located in this judicial district.

## PARTIES

7. Nikolai (Nick) Sarakhman is the sole owner of Byteks USA, LLC (hereinafter "Byteks"), a licensed freight carrier. He is a United States citizen of Russian and Belarussian ancestry, ethnicity, and national origin. He resides in the State of Maryland.

8. Byteks is incorporated in the State of Maryland.

9. Sumitomo Mitsui Finance and Leasing Company, Limited (hereinafter "Sumitomo") is a Japanese multinational banking company which maintains its United States headquarters in New York, New York. It provides banking services, including extending financing to commercial enterprises.

## COMMON FACTS

10. In or around January 2023, Plaintiff contacted Defendant to request financing for a truck he wished to purchase for his business.

11. On or about February 3, 2023, Defendant's Vice President and Regional Sales Manager, Jason Gregory, confirmed in writing that Byteks had been approved for a loan and the approval would remain active for 90 days. Exhibit 1.

12. Plaintiff accepted Defendant's offer to provide financing when he replied by email, "Thank you. I'll let you know as soon as I find the truck I want." Id.

13. On or about March 20, 2023, Plaintiff emailed Gregory to advise him that he found a suitable truck he wished to purchase, using financing offered by Defendant. Id.

14. On or about March 21, 2023, Gregory responded that the loan approval was good for 90 days and that Defendant would provide financing for up to $171,000. Id.

15. Relying upon this confirmation, Plaintiff purchased a truck for $177,500, plus auction fees.

2

16. On or about Thursday, March 31, 2023, Gregory confirmed to Plaintiff by email that Defendant "…should have the deal reapproved on Monday as well. Once we get the invoice and title copy, we will prepare documents and have them emailed to you." Id.

17. On or about April 2, 2023, Plaintiff forwarded Gregory the invoice for the truck. Id.

18. In a phone call on or around April 2, 2023, Plaintiff revealed to Gregory that he was originally from Russia and Belarus but that he had immigrated to the United States as a child.

19. After this conversation, Gregory told Plaintiff that Sumitomo was looking through Plaintiff's social media sites, an unusual step unrelated to his company's creditworthiness, taken only after Defendant learned of Plaintiff's race, ethnicity, ancestry, and national origin.

20. On or about April 3, 2023, Gregory emailed Plaintiff and wrote: "Please confirm that you are 100% owner of Byteks USA. Thanks."

21. Plaintiff responded on or about April 3, 2023, confirming that he was the 100% owner of Byteks USA.

22. On or about April 3, 2023, Gregory noted a discrepancy in the financing documents where Plaintiff identified himself by the nickname "Nick" rather than the Russian-sounding "Nikolai", and asked Plaintiff to confirm that *Nikolai* Sarakhman was the sole owner of Byteks USA.

23. On or about April 3, 2023, Plaintiff confirmed that Nikolai Sarakhman was the sole owner of Byteks USA.

24. On or about April 5, 2023, Gregory sent another email to Plaintiff, in which he wrote:

> Our compliance team is very thorough and they have some questions with regard to operations in Russia and Belarus…can you please respond to the below questions:
>
> 1. What is the presence the customer has in the countries of Russia and Belarus? Is there a physical presence including sales office or manufacturing office?
> 2. What is the nature of the customer's business (e.g., are they selling products in the country, what types of products)?
> 3. Breakdown of the revenue generated in the country (if the customer is willing to provide it).

3

    4.   Do the entities in Russia or Belarus operate as subsidiaries or as sister companies to the US Entity?

25. Plaintiff truthfully answered these strange questions and affirmatively stated: "I do not have any presence in Russia and/or Belarus except for my roots. I was born in Russia and grew up in Belarus. I'm US Citizen."

26. On or about April 10, 2023, Gregory wrote the following in an email to Plaintiff:

> Unfortunately as we discussed our compliance has issues with the company of the same name that is in Russia and Belarus. I have no control over this process and I am still waiting on their approval to move forward with your deal. Your option is to wait as I am to see if they are going to allow us to move forward with your transaction or reluctantly use another lender. I know this is frustrating and I am sorry about the delay. You have provided us everything that we have asked for, but they have our legal team involved and the result is dragging along.
>
> […] I am disappointed to inform you that our Sanctions team completed their review and are now sending this case to the Reputational Risk division for review. I do not have a good answer for you…I would pursue other financing in case I cannot get you the answer we want in a timely fashion.

27. On or about April 17, 2023, Plaintiff wrote: "Need to have 'YES' or 'NO' answer."

28. Gregory replied: "At this point I still have not received one so I would say no[.]"

29. As a result of Defendant's refusal to honor its commitment to provide financing, Plaintiff was forced to apply for a new loan with a different lender, which granted him financing without asking questions about his race, ethnicity, or national origin.

30. As a result of Defendant's refusal to honor its commitment to provide financing, Plaintiff was unable to obtain timely financing and possession of the truck, causing him to lose a lucrative time-sensitive long-term contract with a large food distribution company.

31. As a result of Defendant's discriminatory refusal to honor its commitment to provide financing, Plaintiff suffered humiliation, degradation and other emotional damages.

### COUNT I-VIOLATION OF 42 USC § 1981
### CIVIL RIGHTS ACT

32. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

33. 42 USC § 1981(a) states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other."

34. Plaintiff was a member of a protected class on the basis of his race, ancestry, and ethnicity. He is an immigrant of Russian and Belarussian ancestry and ethnicity.

35. Defendant denied credit to Plaintiff, and refused to abide by its financing commitment to Plaintiff based on Plaintiff's race, ancestry, and ethnicity.

36. Defendant was obliged to conduct business with Plaintiff in a manner that was free from discrimination based on Plaintiff's race, ancestry, and ethnicity.

37. Defendant's actions were taken with a willful and wanton disregard of Plaintiff's rights.

38. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has lost earnings and suffered humiliation, degradation, emotional distress and other consequential damages.

### COUNT II—VIOLATION OF 15 USC §1691 et seq.
### THE EQUAL CREDIT OPPORTUNITY ACT

39. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

40. The Equal Credit Opportunity Act ("ECOA") states, in pertinent part:

(a) It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

   (1) On the basis of race, [… or] national origin […] (provided the applicant has the capacity to contract)[.]

41. Defendant's refusal to abide by its commitment to extend financing to Plaintiff, as alleged herein, constitutes discrimination against Plaintiff with respect to Plaintiff's race and national origin in violation of the ECOA.

42. Plaintiff was a victim of Defendant's discriminatory practices and is "aggrieved" as defined in 15 USC § 1691e(i) and suffered damages as a result of Defendant's conduct in violation of the ECOA, as described in this Complaint.

**COUNT III—VIOLATION OF NEW YORK EXECUTIVE STATE LAW § 290, et seq.**

43. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

44. The New York State Human Rights Law, New York Executive Law §296a(1) states, in pertinent part:

> (1) It shall be an unlawful discriminatory practice for any creditor or any officer, agent or employee thereof:
>
> b.  To discriminate in the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit, on the basis of race [… or] national origin[…];
>
> c.  To use any form of application for credit or use or make any record or inquiry which expresses, directly or indirectly, any limitation, specification, or discrimination as to race [… or] national origin[…].

45. New York Executive Law §296a(2) states, in pertinent part:

> [I]t shall be considered discriminatory if, because of an applicant's or class of applicants' race, [… or] national origin[…];
>
> (i)   an applicant or class of applicants is denied credit in circumstances where other applicants of like overall credit worthiness are granted credit[.]

46. New York Executive Law §296a(3) states, in pertinent part:

> It shall not be considered discriminatory if credit differentiations or decisions are based upon factually supportable, objective differences in applicants' overall credit worthiness, which may include reference to such factors as current income, assets and prior credit history of such applicants, as well as reference to any other relevant factually supportable

    data; provided, however, that no creditor shall consider, in evaluating the credit worthiness of an applicant, aggregate statistics or assumptions relating to race, … national origin, citizenship or immigration status […].

47. Defendant discriminated by withholding credit on the basis of Plaintiff's race and national origin.

48. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has lost earnings and suffered humiliation, degradation, emotional distress and other consequential damages.

### COUNT IV—VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW

49. Plaintiff repeats and incorporates all the allegations of this Complaint, as if fully set forth herein.

50. The New York City Human Rights Law, § 8-107.4, states, in pertinent part:

    a. It shall be an unlawful discriminatory practice for any […] place or provider of public accommodation:

        1. Because of any person's actual or perceived race […  or] national origin, […], directly or indirectly:

            (a) To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation; or

            (b) To represent to any person that any accommodation, advantage, facility or privilege of any such place or provider of public accommodation is not available when in fact it is available[.]

51. Defendant is a "place or provider of public accommodation" under the New York City Human Rights Law § 8-102.

52. Defendant committed an unlawful discriminatory practice by refusing and withholding its credit and financing services to Plaintiff on the basis of Plaintiff's actual or perceived race and national origin.

53. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has lost earnings and suffered humiliation, degradation, emotional distress and other consequential damages.

7

54. To satisfy the notice requirements of § 8-502 of the New York City Human Rights Law, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of this filing.

## JURY DEMAND

55. Plaintiff hereby incorporates all previous sections of this Complaint and demands a trial by jury.

## CONCLUSION

WHEREFORE, Plaintiff seeks the following relief from this Court:

A. Judgment in favor of Plaintiff on all counts;

B. The full extent of damages allowed under the law in an amount to be shown at trial, including, but not limited to actual and compensatory damages for past and future pecuniary losses, consequential damages, non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, liquidated damages, punitive damages, and exemplary damages;

C. Court costs, interest, and other reasonable expenses incurred in pursuing this action, including all reasonable attorneys' fees as authorized by the law; and

D. Such other relief this Court deems just and proper in this case.

Respectfully submitted,

/s/ David Tykulsker
David Tykulsker, Esq.
Bar ID# DT2609
David Tykulsker & Associates
161 Walnut St.
Montclair, NJ 07042-3801
973 509-9292 (office)
973 509-1181 (fax)
david@dtesq.com

<div style="margin-left: 50%;">

<u>/s/ Matthew J. Clark, Esq.</u>
Matthew J. Clark
(pro hac vice admission pending)
Gregory, Moore, Brooks & Clark, P.C.
28 West Adams Ave., Suite 300
Detroit, MI 48226
(313) 964-5600 (telephone)
(313) 964-2125 (fax)
matt@unionlaw.net

*Attorneys for Plaintiffs*

</div>